Juanita YEAGER, Plaintiff–Appellee,

v.

### RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant–Appellant.

No. 95–5872.

United States Court of Appeals, Sixth Circuit.

Argued June 3, 1996.

Decided July 8, 1996.

David A. Friedman (argued and briefed), Taustine, Post, Stosky, Berman, Fineman & Kohn, Louisville, KY, Harris J. Berman, Louisville, KY, for Juanita Yeager.

Christopher M. Hill (argued and briefed), McBrayer, McGinnis, Leslie & Kirkland, Frankfort, KY, for Reliance Standard Life Ins. Co.

Before: MILBURN and SUHRHEINRICH, Circuit Judges; JORDAN, District Judge.*

MILBURN, Circuit Judge.

Defendant Reliance Standard Life Insurance Company ("Reliance") appeals the district court's award of disability benefits to plaintiff Juanita Yeager in this action for improper denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* On appeal, the issues are (1) whether the district court erred in applying a de novo standard of review to defendant's decision to deny benefits, and (2) whether defendant's decision to deny benefits to plaintiff should be reversed. For the reasons that follow, we reverse.

## I.

### A.

From 1972 to June 23, 1991, plaintiff Yeager worked for National Tobacco Company in Louisville, Kentucky, as an industrial nurse. Pursuant to her employment, she was covered by a Group Long Term Disability Insurance Policy ("the Plan") provided to National Tobacco Company employees by defendant Reliance and governed by ERISA. The terms of the Plan provide that Reliance will pay a monthly benefit if a claimant:

(1) is Totally Disabled as the result of a Sickness or Injury covered by [the Plan];

(2) is under the regular care of a Physician;

(3) has completed the Elimination Period; and

---

* The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

(4) submits satisfactory proof of Total Disability to [Reliance].

J.A. 35. The Plan further states:

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

(1) during the Elimination Period and for the first 60 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his her regular occupation. . . .

(2) after a Monthly Benefit has been paid for 60 months, an insured cannot perform the material duties of any occupation. . . .

J.A. 30. The maximum duration of benefits under the Plan for someone who is less than 61 years old when disabled is age 65.

On November 21, 1991, plaintiff Yeager applied for disability benefits under the Plan. Her initial application listed as her disabling conditions: "fibronyalgia [sic],[1] lower extremity pain, weakness—fatigue—chronic low back—Arthritis, Herniated Curvical [sic] Disc Bilaterial [sic] Carpal Tunnel or TOS." J.A. 41. She listed several doctors whom she had seen for these conditions. Defendant Reliance investigated the application for disability benefits by writing plaintiff's physicians, Dr. Donna Metz–Dunn, Dr. Nigel Harris, Dr. Ken Kleinsteuber, and Dr. Gary Fox, to determine whether they had treated plaintiff for the stated conditions. Defendant Reliance also had plaintiff independently evaluated through a functional capacity evaluation and forwarded the evaluation reports to plaintiff's physicians for their comments.

Reliance's investigation established the following facts. Plaintiff first consulted Dr. Donna Metz–Dunn for the conditions of which she complained on March 12, 1990. On November 13, 1991, Dr. Metz–Dunn completed a statement of disability, listing her

diagnosis as fibromyalgia and stating that plaintiff was disabled from her regular occupation but not from any occupation. J.A. 58. She also indicated a need to "consult with rheumatology" concerning her diagnosis of fibromyalgia. *Id.* On January 13, 1992, Dr. Metz–Dunn wrote defendant a letter that described plaintiff's diagnosis as "degenerative disc disease with a possible element of fibromyalgia." J.A. 55. This letter stated:

Mrs. Yeager feels she is unable to continue the duties entailed in her current job situation. Mrs. Yeager is unable to perform activities involving lifting, pushing, pulling or significant amounts of physical activity due to her back disease. Further prognostic determinations are dependent on her follow-up evaluation with Dr. Harris[, her rheumatologist,] as is the extent of her disability.

J.A. 56. Finally, Dr. Metz–Dunn sent defendant a letter on March 7, 1992, stating that plaintiff had been diagnosed with fibromyalgia/fibrositis and that she was unable to perform her usual duties due to myalgias and arthralgias. J.A. 54. After examining the results of plaintiff's functional capacity evaluation, Dr. Metz–Dunn stated that disability was not her area of specialty and that she strongly suggested that a disability physician assess the entire situation. J.A. 46.

Dr. Nigel Harris, a rheumatologist, examined plaintiff on three occasions: August 22, 1990, January 8, 1991, and August 22, 1991. At Reliance's request, Dr. Harris summarized his opinion of plaintiff's condition on December 26, 1991. He stated that he did not "have a good handle on Ms. Yeager's problems" and that he was uncertain of the extent to which her degenerative disc disease contributed to her pain. J.A. 67. He further stated that he had considered fibromyalgia as a possible diagnosis but found that plaintiff

---

**1.** One of plaintiff's doctors described fibromyalgia, also called fibrositis, as follows:

Fibromyalgia is a syndrome of musculoskeletal pain that occurs within the broad spectrum of non-articular rheumatism. Pain may arise from structures outside of the joint, such as the bones, tendons, ligaments, and muscles. Patients often complain of musculoskeletal pain, stiffness, and easy fatigability. Patients with fibromyalgia are symptomatically made worse by stress. Some people have felt that fibro-

myalgia is a masked form of depression, or an anxiety disorder. However, psychological tests have been normal in many fibromyalgia patients in other studies. Fibromyalgia is a disease of dysfunction, rather than a progressive physical deterioration to crippling deformities. Patients improve by improving their level of physical fitness, minimizing stress, and adopting sound sleeping habits.
J.A. 91.

did not have the number of tender points normally accepted for a diagnosis of fibromyalgia. He concluded:

I believe Ms. Yeager's complaints to be real and (in her view) disabling, but I can offer no definite diagnosis for these symptoms. It would be difficult for me to make a recommendation about disability and would suggest she be assessed by an independent evaluator.

J.A. 67–68. In a subsequent letter, Dr. Harris again wrote that he believed plaintiff Yeager's complaints to be real but had been "unable to document any physical abnormality that might account for her pains...." J.A. 64. In a final letter on May 6, 1992, following his review of the functional capacity evaluation, Dr. Harris wrote:

Performance of CPR and other physical activities required in an emergency would be difficult for her to do because of pain. These are subjective complaints, but as far as this patient is concerned, they are real enough. Certainly, I would not recommend that she be expected to respond and render assistance in serious emergencies. As to her remaining duties, I have stated that she has no musculoskeletal abnormalities that would prevent her doing these, but her complaints of bodily pain seem real enough and in her estimation may detract from her ability to function normally. A complete evaluation by me on more than one occasion would find no anatomic explanation for her body pains and is commonly the case in patients with fibrositis.

J.A. 62.

Dr. Ken Kleinsteuber wrote defendant on January 22, 1993, indicating that plaintiff had been diagnosed with fibromyalgia by Dr. Harris prior to seeing him. He further wrote:

In view of Ms. Yeager's job description, her neck and back pains limit her ability to lift and pull. Her persistent pain and stress can detract from her concentrating on her other duties, and I feel that Ms. Yeager's complaints keep her from carrying out her normal work duties.

J.A. 91. In a second letter on April 12, 1993, Dr. Kleinsteuber stated that after reviewing plaintiff's job description and functional capacity evaluation, he felt that she could perform ninety-five percent of her occupation. The only job duty in which he felt she was limited was running while carrying an oxygen unit to the scene of an accident or illness episode. He further wrote that "[t]here is no definitive test to support a diagnosis of fibromyalgia." J.A. 94.

Finally, Dr. Gary Fox, a neurologist to whom plaintiff was referred by Dr. Metz–Dunn, wrote on September 17, 1991 that he had found "no objective neurologic abnormalities." J.A. 98. Following its investigation, Reliance denied plaintiff's claim for benefits on May 27, 1992, on the ground that there was insufficient evidence that plaintiff was totally disabled within the meaning of the Plan.

**B.**

On June 30, 1993, plaintiff filed a complaint in the Circuit Court for Jefferson County, Kentucky alleging that defendant had wrongfully deprived her of benefits that she was due under the terms of the Plan in violation of 29 U.S.C. § 1132(a)(1)(B). Defendant removed the action to federal court on July 21, 1993, on the ground that it presented a federal question. Subsequently, defendant moved for summary judgment, arguing in part that the district court should review its denial of benefits to plaintiff under an arbitrary and capricious standard. On May 11, 1994, the district court denied defendant's motion for summary judgment, holding that a de novo standard applied to its review of the case and that under such a standard, defendant was not entitled to summary judgment. J.A. 10.

On February 13, 1995, the district court issued its opinion in the case, finding sufficient evidence to support plaintiff's claim that she was totally disabled from performing the material duties of her regular occupation and holding that plaintiff was entitled to disability benefits for sixty months. In reaching this conclusion, the court considered a June 4, 1993 decision by the Department of Health and Human Services that plaintiff was entitled to social security disability benefits to be significant. However, the district court also held that plaintiff's evidence fell short of

demonstrating that she was disabled from all work permanently and therefore entitled to lifetime benefits.

Subsequently, plaintiff requested clarification of the district court's order. The court stated that it "intended to adjudicate and conclude Plaintiff's eligibility for sixty (60) months disability *at this time.*" J.A. 19. It also stated that it had "concluded that Plaintiff had not provided sufficient evidence to entitle her to lifetime benefits *at this time,*" but that its ruling was not meant "to preclude Plaintiff from establishing a right to lifetime disability benefits, if she might be entitled to them under the Reliance Plan." *Id.* This timely appeal followed.

## II.

### A.

■ First, defendant argues that the district court erred in applying a de novo, rather than an arbitrary and capricious, standard to review its denial of benefits to plaintiff. Our review of the district court's determination regarding the proper standard to apply in its review of defendant's decision is de novo. *Whisman v. Robbins,* 55 F.3d 1140, 1143 (6th Cir.1995).

An employee may challenge a benefit eligibility determination under 29 U.S.C. § 1132(a)(1)(B). In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court discussed the standard of review that courts should apply when an administrator's decision to deny benefits is challenged under this section. In *Bruch,* the court of appeals had applied an "arbitrary and capricious" standard of review, but the Supreme Court reversed. It held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956. The Court reasoned that general trust law principles should govern the choice of a standard. Because a trustee's decisions in carrying out his duties as defined by a trust agreement are accorded deferential treatment only when the instrument grants the trustee discretion, the Court concluded that deference to a plan administrator's decisions would be appropriate only when the plan granted discretion to the administrator.

Therefore, under *Bruch,* application of the highly deferential arbitrary and capricious standard of review is appropriate only when the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan. This circuit has interpreted *Bruch* to require that the plan's grant of discretionary authority to the administrator be "express." *Perry v. Simplicity Eng'g,* 900 F.2d 963, 965 (6th Cir. 1990); *see also Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546, 550 (6th Cir.1989) (requiring that grant of discretion be "clear"). Therefore, in this case, we must examine the Plan language to determine whether the administrator is given such discretion.

■ Defendant argues that the Plan's requirement that a claimant submit "satisfactory proof of Total Disability to us" is a sufficient grant of discretion under *Bruch* to warrant application of the "arbitrary and capricious" standard of review. To support its position, defendant relies heavily on *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991). In *Miller,* the plaintiff asserted a claim for benefits, which the plan administrator denied based on a determination that the plaintiff was not totally disabled. In an action for review of this determination, the district court granted summary judgment to the defendant. On appeal, we found it necessary to determine whether to apply an arbitrary and capricious or de novo standard of review under *Bruch.* Focusing on plan language stating that a disability determination would be made "on the basis of medical evidence satisfactory to the Insurance Company," *id.* at 980, we held that there was a clear grant of discretion to the plan administrator and concluded that the district court correctly applied an arbitrary and capricious standard to review the defendant's termination of benefits. *Id.* at 983–84.

The district court compared the language at issue in this case to the language in *Miller* and held that "due to the rearrangement of

several words, ... [the Reliance Plan's language] neither expressly nor clearly reserve[d] unto Defendant discretionary authority to determine benefits." J.A. 12. The court focused on defendant's placement of the words "to us" and concluded that because "[t]he phrase 'to us' ... could modify [either] 'submits' or ... 'satisfactory proof of total disability,' " it was ambiguous. *Id.* Plaintiff argues that the district court's holding was correct based on the fact that the Plan language does not specify to whom the proof that a claimant is required to submit must be satisfactory. Plaintiff contends that "[t]he syntax makes clear that 'to us' modifies 'submit,' not 'satisfactory.' " Brief of Plaintiff at 7. In its view, the Plan's failure to designate to whom the proof must be satisfactory means that it could be interpreted to mean satisfactory to Reliance, satisfactory to the claimant, or satisfactory to an objective third party.

We disagree with the district court's reading of the Plan. We can find no meaningful distinction between the language in the present Plan and that in *Miller*. The critical requirement in *Miller* is that the evidence of disability be satisfactory. A determination that evidence is satisfactory is a subjective judgment that requires a plan administrator to exercise his discretion. Like the *Miller* plan, the Plan at issue in this case requires "satisfactory proof of total disability." It would not be rational to think that the proof would be required to be satisfactory to anyone other than defendant Reliance. Even if the phrase "to us" is interpreted as defining to whom the proof should be submitted, there is no reason to believe that someone other than the party that received the proof would make a determination regarding its adequacy. Furthermore, the district court's emphasis on the fact that the Plan language could have been clearer is misplaced. The mere fact that language could have been clearer does not necessarily mean that it is not clear enough. Therefore, we conclude that the Plan language granted the administrator discretion to determine eligibility for benefits, and the district court should have

applied an arbitrary and capricious standard of review.[2]

**B.**

The district court's application of an incorrect standard of review, however, does not necessarily compel remand. *See Perry,* 900 F.2d at 965–66; *Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union 4–447,* 47 F.3d 139, 144 (5th Cir.1995). Had the district court applied the correct standard, we would still review de novo its holding regarding whether the plan administrator's decision to deny benefits was arbitrary and capricious. *See Waxman v. Luna,* 881 F.2d 237, 240 (6th Cir.1989) (per curiam) (holding that de novo review applies to mixed questions of law and fact); *Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 600–01 (5th Cir.1994). Accordingly, we will review defendant Reliance's decision under the arbitrary and capricious standard.

When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard, we are required to consider only the facts known to the plan administrator at the time he made his decision. *Miller,* 925 F.2d at 986. "An ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.' " *Id.* at 984 (quoting *Daniel v. Eaton Corp.,* 839 F.2d 263, 267 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988)).

Considering the information before the administrator at the time he made his decision, we cannot find that he acted in an arbitrary and capricious manner. The Plan required plaintiff to submit satisfactory proof that she could not perform the material duties of her regular occupation, and defendant had received no medical evidence of any physical condition or anatomic abnormality that would cause plaintiff to be totally disabled. The disabling condition on which plaintiff based her claim for disability benefits is fibromyalgia, but no doctor ever actu-

---

**2.** Because we determine that the appropriate standard of review is arbitrary and capricious, we do not address defendant's argument that the

de novo review required by *Bruch* when a plan administrator has no discretion does not apply to the administrator's factual determinations.

ally definitively diagnosed plaintiff as having this condition. In their letters and reports, Drs. Metz–Dunn and Kleinsteuber listed plaintiff's condition as fibromyalgia, but both of these doctors were relying on reports from Dr. Harris, who actually stated that he considered fibromyalgia but could offer no definite diagnosis of plaintiff's condition. Furthermore, Dr. Kleinsteuber found plaintiff to be capable of performing ninety-five percent of her assigned duties.

The district court found the record to be sufficient to support an award of disability benefits based on the fact that no doctor doubted the veracity of plaintiff's subjective complaints of fatigue and joint pain. However, as defendant points out, "[t]hese types of subjective complaints are easy to make, but almost impossible to refute." Brief of Defendant at 26. In the absence of any definite anatomic explanation of plaintiff's symptoms, we cannot find that the administrator's decision to deny benefits was arbitrary and capricious.

### III.

For the reasons stated, the judgment of the district court is REVERSED, and the district court is directed to enter judgment for defendant.