**David B. PIERCE, Plaintiff,**

v.

**KENTUCKY UTILITIES COMPANY'S LONG TERM DISABILITY PLAN, et al., Defendants.**

**No. CIV.A.5:03–281–JMH.**

United States District Court, E.D. Kentucky, Lexington Division.

Jan. 31, 2005.

C. Randall Raine, Henry, Watz, Gardner & Sellars, P.S.C., Lexington, KY, for David B. Pierce, Plaintiff.

Michael E. Heffernan, Philip Fred Brown, Brenner, Brown, Golian & McCaffrey, Co., LPA, Columbus, OH, John R. McCall, Louisville, KY, for Kentucky Utilities Company's Long Term Disability Plan, Kentucky Utilities Company, Defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

Pursuant to the Court's order of August 12, 2004, this matter is before the Court on cross-motions for judgment on the merits [Record Nos. 14 and 15].

### INTRODUCTION

In his complaint, Plaintiff presents claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (hereinafter "ERISA"). This case involves a claim for total disability benefits under an ERISA-governed employee benefit plan. Plaintiff claims that he is totally disabled and continuously un-

able to perform the substantial and material duties of any occupation. Continental Casualty Company, the insurer and claims administrator of Kentucky Utilities Company's employee benefit plan, initially granted "own occupation" benefits under the plan for a period of twenty-four months, finding that Plaintiff's physical impairment from injury rendered him unable to perform his own occupation as a Parts/Maintenance Technician. Continental Casualty subsequently denied Plaintiff's claim for "any occupation" benefits determining that Plaintiff failed to present sufficient evidence to support his contention that his condition was of the severity to render him unable to perform any occupation. Plaintiff asks the Court to find that the decision denying benefits was arbitrary and capricious and requests the Court enter judgment in his favor.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, David Pierce, now age 42, was injured in the course of his employment with Kentucky Utilities Company ("KU"). Plaintiff began working for KU at its E.W. Brown power plant in 1987. He was employed as a Parts/Maintenance Technician. At all relevant times, KU had in effect a group long-term disability plan. KU's Long Term Disability Plan ("the Plan") is established and funded though a policy of insurance purchased by Kentucky Utilities Company from Continental Casualty, part of the CNA Insurance Group ("CNA"). The Plan, qualifies as an "employee welfare benefit plan" [1] under ERISA. By virtue of his employment with KU, Plaintiff was a participant in the Plan.

The Plan provides for the payment of disability benefits to eligible KU employees. It defines disability as follows:

1. 29 U.S.C. § 1002(1).

*Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.

### Occupation Qualifier

*"Disability"* means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:

1. continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation;* and

2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

After the *Monthly Benefit* has been payable for 24 months, *"Disability"* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:

1. continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and

2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

The Plan also provides the following requirements for establishing entitlement to benefits:

### WHAT ARE THE CLAIM FILING REQUIREMENTS?

\*　　\*　　\*　　\*　　\*　　\*

### Proof of Disability

The following items, supplied at *Your* expense, must be a part of *Your* proof of loss. Failure to do so may delay, suspend or terminate *Your* benefits:

\*　　\*　　\*　　\*　　\*　　\*

5. Objective medical findings which support *Your Disability.* Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly [sic] accepted in the practice of medicine, for *Your* disabling condition(s).

6. The extent of *Your Disability,* including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation.*

The Plan also states, "[w]hen making a benefit determination under the Plan, *We* [Continental Casualty] have discretionary authority to determine *Your* eligibility for benefits and to interpret the terms and provisions of the Plan." According to KU, "CNA Insurance is fully responsible for the administration of any potential claim under the plan."

On August 24, 1998, KU submitted to CNA documents in support of David Pierce's claim for long term disability. Plaintiff's last day of work was listed as January 14, 1998. The materials submitted to CNA included a report from Pierce's treating orthopedic surgeon, Dr. John Vaughan of Lexington, Kentucky, regarding Pierce's right-sided disc herniation in his low back at LS/Sl. Dr. Vaughan further stated that Plaintiff was totally disabled from January 15, 1998, to August 1, 1998. Dr. Vaughan's restrictions were "(1) No lifting, (2) No bending or twisting." Dr. Vaughan noted that he felt Plaintiff could not perform his current position.

An incident report was submitted with the claim. That report demonstrated that on April 4, 1995, Plaintiff "was lifting and moving cable racks and other parts and felt pain in right elbow. He reported the injury and after pain persisted for several weeks, he decided to see his physician." A letter from the Workers Compensation Claims Administrator dated August 14, 1998, was also submitted. The letter stated, "[w]e have been notified by Dr. Vaughan that you have reached maximum medical improvement concerning your injury. Kentucky Utilities will continue your Temporary Total Disability benefits for four additional weeks following this notification if you do not return to work."

CNA subsequently interviewed Plaintiff. The Administrative Record illustrates that Plaintiff indicated to CNA that he,

had surgery on neck, R[eturned] T[o] W[ork] at light duty job with lifting restrictions. About 8/97 he started to have pain in his back and found low back disc herniation. States that he last worked 1/5/98. Rec[eived] work[ers] comp[ensation] until 8/15/98. W[orkers]/C[ompensation] stopped as he reached M[aximum] M[edical] I[mprovement].

Plaintiff also informed CNA that had a high school education and worked in the army "for 5 y[ea]rs as a combat engineer." In a subsequent interview, Plaintiff informed CNA that he once had a DJ business but that he could no longer engage is such work due to his back problems. He also stated that he possessed basic computer skills.

By letter dated October 8, 1998, Pierce was notified by CNA that his long term disability claim was approved for payment, with benefits to commence on August 16, 1998. The letter further advised Pierce as follows:

Benefits are payable for 24 months if you are no longer able to perform the duties of your regular occupation. Benefits beyond 24 months are only payable if you are unable to perform the duties of any occupation for which you may have prior training, transferable skills or past experience.

On the same day that CNA advised Pierce that his application for long term disability benefits was approved, it also directed Pierce to undergo a functional

capacity evaluation ("FCE"). The FCE was performed on October 21, 1998, by physical therapist Glenn Decker in Danville, Kentucky. The FCE report references Pierce's disc herniation at L5/S1 and his subsequent lumbar discectomy, as well as treating surgeon Dr. Vaughan's weight lifting restriction of 25 pounds. The FCE report states that there is no evidence of symptom disability exaggeration and that Pierce gave maximal effort during the evaluation. The physical therapist concluded,

> that Mr. Pierce can work at the LIGHT physical demand level and that his test data is valid. His functional capacity is limited by pain in the right hip and numbness and pain in the right leg. There were no indications of symptom disability exaggeration.

The therapist's report stated that Pierce did not qualify for the lifting or carrying requirements of his regular job at KU.

On November 19, 1998, CNA referred Pierce's medical information and FCE to CNA's Rehabilitation Coordinator. The referral requested a vocational evaluation "for each and every occupation." On January 4, 1999, Rehabilitation Specialist Eileen Glass, performed a vocational assessment of Plaintiff's ability to perform alternate occupations. The assessment expressly referenced Pierce's disc herniation at L5/S1 and Dr. Vaughan's lifting restriction of 25 pounds. Glass, CNA's in-house evaluator, made the following recommendation:

> We were requested to review the FCE results and to perform a vocational assessment to determine this claimant's capabilities to perform gainful activities at the end of the Own Occ[upation] period. Based upon this claimant's age, education, work experience, ability to perform light/medium work activities and positive geographical location, he would not be TD [totally disabled] beyond the

Own Occ[upation] period. The following employment options are appropriate for his consideration after the Own Occ[upation] period: Auto Parts Counter Clerk; Rental Clerk; Small Parts Assembler; Inventory Control Clerk.

On March 3, 1999, Pierce was advised in writing by CNA that he did not meet the Plan's definition of Total Disability beyond the twenty-four month "Own Occupation" period, and that benefits would be considered only until June 27, 2000, the end of the twenty-four month "Own Occupation" period. Pierce was further advised that a "Rehabilitation Specialist" had determined that he was able to perform the work of an auto parts clerk, a rental clerk, a small parts assembler, or an inventory control clerk. Pierce was also notified of his ERISA rights with regard to appeal.

On May 17, 1999, Pierce was asked by CNA to advise them of any Social Security award. Pierce responded with a copy of the Social Security Administration's denial of disability, dated November 13, 1998. By letter of June 21, 1999, CNA told Pierce that he was required to appeal the Social Security denial through the hearing process. CNA's letter also stated: "Please forward evidence that you have appealed their decision. If you have not done so, please contact the local office of the Social Security Administration as soon as possible and file an appeal."

On July 8, 1999, Pierce, through his attorney, requested that CNA reconsider its determination with regard to disability beyond the "Own Occupation" period, advising that Pierce had, as a result of his work injury, undergone not only the lumbar discectomy at L5/S1, but also a previous discectomy and neck fusion at C6/C7. A letter from Dr. Vaughan, dated October 22, 1998, was enclosed. In said letter, Dr. Vaughan stated,

At this point, the [restrictions] I have already assigned him is that he should lift no more than 25 pounds and avoid repetitive bending and twisting of the back. To be more specific, the maximum he can lift occasionally is 25 pounds. The maximum he can lift on a repetitive basis is seven pounds.

You asked specifically about bending, twisting, crawling, and climbing. Mr. Pierce may occasionally bend, twist, and crawl during the week day. I would say these activities are allowable 1–3 times per day. I would restrict him from climbing at all.

By letter of August 12, 1999, CNA provided a copy of the FCE done on October 21, 1998, and advised "The Social Security Administration also concurs with the fact that Mr. Pierce could perform other jobs than the previous one he had with Kentucky Utilities." By response dated August 20, 1999, Pierce's attorney again advised CNA that the FCE dealt only with the effects of Pierce's herniated disc at L5/S1, and did not consider his cervical herniation and discectomy. By letter dated August 27, 1999, CNA again stated its reliance on the Social Security Administration's denial of Pierce's claim for disability, and further stated that it was premature to request an appeal because long term disability benefits were still being paid.

On June 13, 2000, CNA requested updated medical records from Dr. John Vaughan. CNA received the updated records on or about June 20, 2000. The records date from September, 1996 until April, 2000, and reveal the following:

- In September, 1996. Dr. Vaughan identified by MRI a right-sided C6/C7 disc herniation.
- On October 16, 1996, Dr. Vaughan performed a cervical discectomy and interbody fusion with bone graft harvested from the left iliac crest.
- On November 20, 1996, Dr. Vaughan noted that there was MRI evidence of acromioclavicular arthritis in Pierce's right shoulder.
- On April 14, 1997, Dr. Vaughan reported x-ray evidence of osteoarthritis in the right hip as well as neck pain. At that time, Dr. Vaughan placed permanent lifting restrictions of no weight greater than 40 pounds.
- In January, 1998, Dr. Vaughan performed x-rays of the right hip which showed degenerative changes with cystic formation in the femoral head.
- In February, 1998, an MRI scan showed a foraminal disc herniation at L5/S1.
- On March 26, 1998, Dr. Vaughan performed a lumbar discectomy and noted a sequestered disc fragment.
- On June 30, 1998, Dr. Vaughan noted that Pierce continued to experience pain in his back, neck, and hip. Dr. Vaughan re-set the lifting restriction at 25 pounds, with avoidance of repetitive bending and twisting of the back.
- On August 9, 1999, Dr. Vaughan performed x-ray studies which indicated a solid fusion in the neck, L5/S1 disc degeneration in the low back, and moderate degenerative changes in the right hip.
- On April 5, 2000, Dr. Vaughan again did x-ray studies of Pierce, who was complaining of pain at the cervicothoracic junction radiating into the trapezial area and into the shoulder. The neck fusion remained solid, but the x-rays revealed degenerative changes both above and below the neck fusion.
- On April 26, 2000, Dr. Vaughan noted that Pierce's pain was "some better," but that he was to stay on his analgesics and anti-inflammatories.

On June 21, 2000, CNA again advised Pierce that he did not meet the definition of Total Disability beyond the "Own Occupation" period. Pierce was advised as follows:

As previously indicated in our letter from 3/3/99, based on the medical information in our file at that time and the evaluation performed by a Rehabilitation Specialist, you are capable of performing the duties of other occupations...

Based on the medical information provided by your physician, we are unable to identify a functional or medical impairment that could preclude [you] from performing the duties of other occupations, as previously indicated in our letter from 3/3/99.

Pierce was informed that his benefits would continue, however, until June 27, 2001, "or the date Kentucky Utilities or other employer offers you a job for which you are reasonably fitted by training, education or experience." CNA explained that these additional benefits were provided for under a Job Reentry Benefit provision contained in the Plan. CNA again informed Plaintiff of his right to appeal and the procedures to be followed in doing so. Specifically, Pierce was told that he had sixty days to make a formal request for reconsideration, that he would be informed if the information he submitted did not alter CNA's decision, and that his claim then would be submitted to the Appeals Committee for formal review. Pierce was advised that the Appeals Committee would issue a ruling within sixty days of receipt of his appeal, but that if an additional sixty days was necessary, then he would be notified in writing within the first sixty days that the additional sixty days was necessary.

Plaintiff's attorney sent a formal request for reconsideration to CNA on August 14, 2000. Along with the request for reconsideration, Plaintiff's attorney submitted two new documents in support of Pierce's contention that he remained totally disabled after the "Own Occupation" period. The first such document was a June 23, 2000, decision from the Social Security Administration granting Pierce benefits under the Social Security Act. The Administrative Law Judge concluded that Plaintiff "has been under a disability, as defined in the Social Security Act, since January 5, 1998." The decision also noted that Pierce "lacks the residual functional capacity to engage in competitive remunerative work activity on a sustained basis." Plaintiff's attorney also enclosed an updated medical report dated May 17, 2000. In said report, Dr. Vaughan stated Plaintiff could lift and carry a maximum of ten pounds occasionally and five pounds frequently. The report also stated that, in Dr. Vaughan's medical opinion, Plaintiff could stand for two hours total in a day and no more than ten minutes without interruption, and sit a total of four hours per day but no more than fifteen minutes without interruption. Dr. Vaughan's report also listed the following restrictions: "(1) no operating heavy vibrating equipment; (2) no driving > 1 hr./day."

The Administrative Record reveals that on December 20, 2000, Vocational Case Manager Eileen Glass, a CNA employee, reviewed the additional documents. From the brief twenty-minute review, Glass concluded that "there is no medical evidence to support the cl[aimant]'s inability to perform the duties of the alternative occupations outlined in the prior VCM review."

By letter of January 5, 2001, CNA reminded Pierce that his monthly long term benefit payment was reduced by his Social Security benefits. CNA also requested a copy of Pierce's dependents' Social Security disability award information. The letter further notified Pierce that his long term disability ("LTD") benefits were being

withheld pending receipt of the requested documentation. All requested information was provided by Plaintiff's attorney. By letter of February 15, 2001, CNA advised Pierce that there had been an overpayment in his account by virtue of his receipt of Social Security benefits. The letter requested Pierce forward a personal check to CNA in the amount of $38,557.92 within two weeks.

On February 23, 2001, Plaintiff's counsel advised CNA that there had never been a response to the request for reconsideration made on August 14, 2000; no advice from CNA that the information was not sufficient to alter the decision; and no notice of submission of the matter to CNA's Appeals Committee for review. In response, on May 10, 2001, CNA advised that, "[o]ur determination of his claim remains."

By letter of May 16, 2001, Plaintiff's counsel advised CNA that Pierce was unsure of the meaning of the phrase "our determination of his claim remains," since CNA had never responded with regard to the materials submitted with Pierce's request for reconsideration. On August 9, 2001, CNA responded again that "our claim determination remains the same," and that Pierce could submit a formal request for reconsideration within 60 days. CNA's letter reiterated that, if the additional information did not alter CNA's original decision Pierce would be so informed, his claim would be submitted for "formal appeal review," and that a ruling would be issued in writing under ERISA within 60 days, or within 120 days if notice of the need for additional time was given.

On September 7, 2001, Plaintiff's counsel again notified CNA that a request for reconsideration had been made on August 14, 2000, yet CNA never advised that the information submitted did not alter its decision, nor had CNA given notice of submitting the matter to its Appeals Committee for formal review. Clearly the August 14, 2000, request was within the allotted 60 days following receipt of CNA's letter of June 21, 2000.

On October 2, 2001, CNA advised Plaintiff's counsel that the appeal rights offered to Pierce in its letter of June 21, 2000, were "premature" because benefits continued to be paid under the "Own Occupation" disability provision. Further, CNA acknowledged that Pierce had exercised his appeal rights on August 14, 2000, "however, there was no appeal issue to be brought forth to the Appeals Committee, since benefits continued to be paid based on the Job Reentry Benefit provision. Therefore, the file was not forwarded to the Appeals Committee." CNA advised that, as it appeared Pierce remained in disagreement with CNA's determination, they would promptly forward his file to the Appeals Committee for their review.

On October 24, 2001, a member of CNA's in-house appeals committee advised Plaintiff's counsel, in writing, that the appeal review had been completed, and the denial of Total Disability benefits had been upheld. Before addressing the merits, CNA advised that it had offered appeal rights prematurely both on March 3, 1999, and again on June 21, 2000, and that there was no appeal issue to consider in June, 2000, since the Job Reentry Benefit payments continued until June 27, 2001. The in-house appeals committee member also stated that when an appeal decision is not reached by the 120th day, the claim decision can be treated as a denial under ERISA. Turning to the merits, Pierce was advised that the decision of the Social Security Administration was not binding, and that the restrictions imposed by Dr. Vaughan "would prevent Mr. Pierce from performing the strenuous type of work he had performed in the past, but the restrictions would not prevent him from performing other less strenuous types of work

previously identified in CNA's letter of March 3, 1999." CNA concluded that Pierce was "not totally disabled from performing any occupation, and no further benefits [were] payable after June 27, 2001." On or about June 26, 2003, Pierce filed this suit for judicial review of CNA's decision.

## STANDARD OF REVIEW

■ In assessing a benefits determination under ERISA, a district court must first decide which of ERISA's two standards of review applies, arbitrary and capricious or *de novo*. Under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), "a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Accordingly, a benefit determination is to be reviewed under an arbitrary and capricious standard if the plan documents contain language granting the administrator or a fiduciary discretion to construe plan language or interpret plan terms. *Id.* Plaintiff acknowledges that KU's long-term disability plan gives discretionary authority to CNA to determine eligibility for benefits. Thus, both parties agree that the highly deferential arbitrary and capricious standard of review applies to the case *sub judice.*

■ The *Firestone* Court also expressly noted that, if a plan gives discretion to an administrator "who is operating under a conflict of interest, that conflict must be weighed, as a facto[r] in determining whether there is an abuse of discretion." *Id.* at 115, 109 S.Ct. 948 (internal citation omitted). The Sixth Circuit made clear in *Killian v. Healthsource Provident Adm'rs,* that where the interpreter of the plan both decides what claims are paid and ultimately pays those claims, "there is an actual,

readily apparent conflict..., not a mere potential for one." *Killian v. Healthsource Provident Adm'rs,* 152 F.3d 514, 521 (6th Cir.1998). Thus, if a conflict of interest is present, while it does not "alter the standard of review" *Peruzzi v. Summa Medical Plan,* 137 F.3d 431, 433 (6th Cir. 1998), a reviewing court is required to take the conflict into account to determine whether a decision is arbitrary and capricious. *University Hospitals of Cleveland v. Emerson Electric Co.,* 202 F.3d 839, 846 (6th Cir.2000).

■ Under the arbitrary and capricious standard of review, the reviewing court will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager v. Reliance Std. Life Ins. Co.,* 88 F.3d 376, 381 (6th Cir.1996) (internal quotations and citation omitted). Hence, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citation omitted). In applying the arbitrary and capricious standard, the court may only consider the facts known to the decision maker at the time of the decision. *Yeager,* 88 F.3d at 381.

## ANALYSIS

■ Taking into consideration CNA's apparent conflict of interest, and the weight of evidence contained in the administrative record, the Court concludes that CNA acted arbitrarily and capriciously in denying total disability benefits to Pierce.

To qualify for total disability benefits under the Plan, Pierce must show, through objective medical findings, that he is physically impaired to such a degree of severity that he is "continuously unable to engage in any occupation for which [he] is or

become[s] qualified by education, training or experience." In this case, CNA's decision to deny total disability benefits was based primarily on Dr. Vaughan's medical records, the Physical Therapy Clinic's FCE, and the determinations and conclusions of CNA's in-house vocational consultant.

It is clear from a review of Dr. Vaughan's records, particularly the medical report dated May 17, 2000, that Pierce's disability prevents him from performing any gainful work activity on a sustained full-time basis. In the words of the Social Security Administration, Dr. Vaughan's May 2000 medical report:

> diagnosed the claimant with herniated cervical disc at C6–7 with C7 radiculopathy status post fusion; herniated L5/S1 disc status post discectomy; and degenerative arthritis (moderate) in the right hip. Dr. Vaughan opined that the claimant could lift/carry 10 pounds occasionally, 5 pounds frequently. He could stand/walk for 2 hours in an 8 hour workday, and for 10 minutes without interruption. The claimant could sit for 4 hours in an 8 hours workday, and for 15 minutes without interruption. He could occasionally balance, stoop, crouch, kneel and crawl, but never climb. His ability to reach, handle, feel and push/pull were affected. The claimant needed to avoid heights, moving machinery, and temperature extremes. He could not operate heavy vibratory equipment, nor drive for more than 1 hour per day. Some serious limitations on the claimant's ability to make occupational adjustments were also present.

It is also apparent from the administrative record that, between 1998 and 2000, Pierce's condition worsened. For instance, Dr. Vaughan's medical notes in 1998 stated that Pierce had a 15% whole body impairment. Subsequently, in a notation dated May 5, 1999, Dr. Vaughan stated that Pierce's total body impairment had escalated to 28%. Also illustrative of Pierce's heightened disability are the weight restrictions imposed by Dr. Vaughan—the doctor's 1998 notes restrict Pierce to lifting no more than 25 pounds, while the 2000 medical report reduces the maximum lifting limit to 10 pounds.

While it is clear that Pierce's condition was deteriorating, it is not clear that CNA attributed proper weight to Dr. Vaughan's updated medical reports. Instead, it appears that CNA continued to rely on Dr. Vaughan's 1998 Attending Physician Statement, Plaintiff's 1998 Functional Capacity Evaluation, and a 1999 in-house rehabilitation specialist's vocational assessment. In fact, in CNA's final letter to Pierce, the in-house appeals committee expressly noted Dr. Vaughan's April 2000 medical records, yet made no mention of the May 2000 medical report. The committee further cited the FCE of October 1998, and the 1999 vocational assessment. The Court finds it patently unreasonable for CNA to base Pierce's eligibility for disability benefits on outdated evidence when Plaintiff provided incontrovertible evidence to the contrary in 2000.

CNA also takes the position that there is no conflict of interest in this case because CNA "actually relied on the opinions of Plaintiff's own treating physician." CNA's letter dated October 24, 2001, however, expressly states that "[t]he determination of disability from any occupation is a vocational matter and our vocational consultant has identified other types of occupations that Mr. Pierce has the ability to perform." It is clear to the Court that, even though Dr. Vaughan's opinions may have come into the vocational consultant's equation, the determination as to whether Pierce was totally disabled, and thus entitled to benefits, was solely in the discretion of a CNA employee, the vocational

consultant. Moreover, the vocational consultant's assessment on which CNA relies was completed in 1999, long before the more restrictive permanent limitations were imposed by Dr. Vaughan.

■ Finally, the Court agrees with Defendants' position that administrators of disability insurance plans under ERISA are not bound by decisions of the Social Security Administration. However, the Court also agrees with the position taken by the Sixth Circuit in *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, (6th Cir. 2003), *overruled on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Citing a Seventh Circuit case, *Ladd v. ITT Corp.*, 148 F.3d 753 (7th Cir.1998), the *Darland* court stated that, in certain situations, it is inconsistent for a plan administrator to ignore the Social Security Administration's determination of disability.

In *Darland*, the plan administrator requested its claimant apply for Social Security disability benefits so as to reduce the amount of monthly disability payments it paid him under the plan. After the Social Security Administration determined Darland was totally disabled and granted him disability benefits, the plan administrator requested Darland reimburse it for overpayment of benefits. The Court determined that it is inconsistent for a plan administrator to completely ignore the Social Security Administration's determination of disability, yet at the same time both demand the claimant apply for Social Security benefits and utilize the Social Security decision to request reimbursement for overpayment of benefits.

It is equally inconsistent in the present case, if not more so, for CNA to ignore the Social Security Administration's June 2000, determination that Pierce is disabled. In May 1999, CNA asked Mr. Pierce the status of his Social Security

application. In June 1999, after learning of the Social Security Administration's denial of Pierce's application for disability benefits, CNA advised Pierce that he was required to appeal the Social Security denial to the hearing level, and that if he had not yet appealed he was to contact the Social Security Administration and file an appeal. Pierce did as instructed. Upon notification that the Administrative Law Judge had awarded benefits, CNA requested a copy of the award information relative to Pierce and his dependents. All of this correspondence culminated in a February 2001, notice to Pierce that there had been an overpayment to him by virtue of his receipt of Social Security disability benefits, and a request for a personal check in the amount of $38,557.92. Meanwhile, in an August 12, 1999, letter to Pierce's attorney, CNA wrote, "the Social Security Administration also concurs with the fact that Mr. Pierce could perform other jobs than the previous one he had with Kentucky Utilities." On August 27, 1999, CNA again referenced the November 13, 1998, letter from the Social Security Administration denying Pierce's claim for disability benefits.

The most glaring aspect of this inconsistency is CNA's reliance on and reference to an unfavorable Social Security Administration determination in support of its determination to deny benefits, yet their complete disregard of the same administration's determination when such determination is favorable to the claimant. The second inconsistency is the same that was present in the *Ladd and Darland* cases: that, to lighten the cost to an employee welfare plan, a plan administrator can encourage and support a claimant to demonstrate total disability to the Social Security Administration, reduce the welfare plan's payment by the amount of the social security award, yet then turn around and deny that the claimant is totally disabled under

the employee welfare plan. It is the Court's opinion that such actions tend to demonstrate that the plan administrator exercised its discretion in an arbitrary and capricious manner.

Defendants' final argument states that "the evidence considered by the SSA was not made available" to CNA. The administrative record, however, clearly belies this statement. The Social Security Administration appears to have placed great weight on a report provided by "claimant's treating surgeon." A copy of this report, along with a copy of the favorable Social Security disability determination, was enclosed in a letter dated August 14, 2000, submitted to CNA by Plaintiff's counsel. While a mere notice of a Social Security Administrative decision granting benefits may not present compelling evidence in favor of disability, that is not the only evidence with which the Defendants were presented. In fact, the evidence presented in this administrative record is replete with such "compelling evidence."

Based only on the administrative record, and applying a highly deferential standard of review, it is this Court's finding CNA acted arbitrarily and capriciously in denying total disability benefits to Pierce.

Accordingly,

**IT IS ORDERED,**

(1) that Plaintiff's motion for summary judgment [Record No. 14] be, and the same hereby is, **GRANTED;**

(2) that Defendants' motion for summary judgment [Record No. 15] be, and the same hereby is, **DENIED;**

(3) that the administrative record taken as a whole supports the finding that, as of May 2000, Plaintiff lacks the residual functional capacity to engage in competitive remunerative work activity on a sustained full-time basis. Thus, it is ordered that CNA continue payment of total disability benefits to Pierce and award him all benefits past due plus interest and costs.

## JUDGMENT

Based only on the administrative record, and applying a highly deferential standard of review, it is this Court's finding that CNA acted arbitrarily and capriciously in denying total disability benefits to Pierce. Thus, the administrative record, taken as a whole, warrants a finding that, as of May 2000, Plaintiff lacks the residual functional capacity to engage in competitive remunerative work activity on a sustained full-time basis.

Accordingly,

**IT IS HEREBY ORDERED:**

(1) That the plaintiff is awarded a judgment against the defendant.

(2) That CNA is **DIRECTED** to **CONTINUE PAYMENT** of total disability benefits to Pierce and **AWARD** him all benefits past due plus interest and costs.

(3) That all pending motions be, and the same hereby are, **DENIED AS MOOT**.

(4) That all scheduled proceedings be, and the same hereby are, **CONTINUED GENERALLY**.

(5) That this action be, and the same hereby is, **STRICKEN FROM THE ACTIVE DOCKET**.

(6) That this Order is **FINAL AND APPEALABLE and THERE IS NO JUST CAUSE FOR DELAY**.