RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0241p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

LAURA WASKIEWICZ,

                  *Plaintiff-Appellant,*

    *v.*

UNICARE LIFE AND HEALTH INSURANCE COMPANY,

                  *Defendant-Appellee.*

No. 14-1479

---

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:12-cv-11250—Mark A. Goldsmith, District Judge.

Argued: January 16, 2015

Decided and Filed: October 2, 2015

Before: NORRIS, ROGERS, and WHITE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Robert B. June, LAW OFFICES OF ROBERT JUNE, P.C., Ann Arbor, Michigan, for Appellant. Thomas F. A. Hetherington, EDISON, MCDOWELL & HETHERINGTON, LLP, Houston, Texas, for Appellee. **ON BRIEF:** Robert B. June, LAW OFFICES OF ROBERT JUNE, P.C., Ann Arbor, Michigan, for Appellant. Thomas F. A. Hetherington, Blaire Bruns Johnson, EDISON, MCDOWELL & HETHERINGTON, LLP, Houston, Texas, Michelle Thurber Czapski, Matthew R. Rechtien, BODMAN PLC, Detroit, Michigan, for Appellee.

---

**OPINION**

---

    ALAN E. NORRIS, Circuit Judge. Plaintiff Laura Waskiewicz worked for Ford Motor Company as a product design engineer from 1990 until October 26, 2010. She subsequently sought long-term disability benefits under the Ford Motor Company Salaried Disability Plan (the

"Plan").   Defendant UniCare Life and Health Insurance Company ("UniCare") serves as the claims processor for the Plan, which is governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.   The district court granted summary judgment to UniCare based upon its conclusion that plaintiff did not qualify for benefits under the Plan because she had already been terminated by Ford when she sought those benefits. We now reverse.

**I.**

According to her complaint, plaintiff suffers from type-1 diabetes, major depression, and gender identity disorder (she was formerly known as David Waskiewicz).   (Page ID 4.)   On October 25, 2010, her last day at Ford, she suffered "a debilitating emotional breakdown." *Id.* These medical conditions were noted by her treating physician, Dr. Pamela Rockwell.   (Page ID 554.)

The version of the Plan at issue in this appeal dates from January 1, 2010.   (Page ID 658.) Section 3 of the Plan details the criteria that an employee must establish to be eligible for disability benefits.   (Page ID 667.) Among other things, the claimant must be an "Active Employee with a Disability"; provide proof of her disability and medical treatment; submit to an independent examination at the expense of the employer; and, to qualify for long-term benefits, she "must be unable to engage in regular employment or occupation with the Company." *Id.* Section 3 of the Plan also includes the following subsection:

> An Active Employee whose employment is terminated under the Ford Involuntary Salaried Separation Policy (FISSP) . . . shall cease to be eligible for Benefits as of the earlier of:
>> (a) the date the Employee has been notified; or
>> (b) the day prior to the date of such termination (in the case of retroactive terminations) and shall cease to be a Covered Employee hereunder as of such date.

(Page ID 667-68) (Section 3(xi)).   An employee is required to notify "the Claim Processor and the Company if the employee is absent for more than five (5) consecutive Workdays."   (Page ID 668) (Section 4.02).   Plaintiff did not inform Ford within the five-day period.   Rather, the administrative record reveals that plaintiff's father, Jack Waskiewicz, notified UniCare of the

disability claim on behalf of his daughter in December.  (Page ID 548-49.)  According to the administrative record, her parents lost contact with plaintiff on October 15, 2010.  When they came to check on her weeks later, they found her a "mess" and barricaded in her house.  (Page ID 556.)  On December 16, UniCare told Mr. Waskiewicz that "it seems that [plaintiff] has been terminated" and, if this were the case, she would not be eligible for benefits.  *Id.*  On December 22, 2010, UniCare followed this conclusion up with a letter to plaintiff, informing her that her claim was denied:

> UniCare has received information from Ford Motor Company indicating that effective October 25, 2010, you are no longer employed as a regular salaried employee.  According to the Salary Plan dated January 1, 2010, persons who are not employed as a regular salaried employee are not covered under the plan, and are not eligible for disability benefits.

(Page ID 558.)  Plaintiff points out that no formal document terminating her employment is contained in the administrative record.  In a supplemental brief to the district court, Ford attached a declaration by a human resources employee, Tamika Pettway,[1] that includes the following assertion:

> On November 18, 2010, I sent to Plaintiff by certified mail a letter informing her that her employment with Ford had been terminated effective as of October 26, 2010, because of her failure to report to work or to provide satisfactory medical or other documentation to justify her absence.  Under Ford personnel practices and procedures, the termination was effective as of 12:01 a.m. on October 26.  The United States Postal Service provided confirmation that Plaintiff signed for the letter on November 23, 2010.

(Page ID 987.)  Ford averred below that it did not terminate plaintiff pursuant to Section 3(xi) of the Plan (quoted earlier) but, rather, she was fired "under a long-standing personnel process known as the '5-day quit rule.'  This process applies to employees who are absent from work without authorization and without providing medical evidence or other documentation to justify their absence."  (Page ID 982.)

It appears that plaintiff did not seek medical help until November 24, 2010, when she saw Dr. Rockwell.  The doctor returned a disability certificate on plaintiff's behalf on December 13,

---

[1]The complaint originally included an Americans with Disabilities Act claim and named Ford and Pettway defendants.  The ADA claim has been voluntarily dismissed.  (Page ID 434.)  Neither Pettway nor Ford is party to this appeal.  (Page ID 127.)

2010, which stated that plaintiff was disabled since October 25, 2010.  (Page ID 554.)  She did not provide an anticipated return-to-work date for plaintiff.

In any event, as just discussed, UniCare informed plaintiff on December 22, 2010, that her application for benefits was denied because she had been terminated as of October 25. (Page ID 558.)**2**  In March 2011, UniCare received additional medical records from Dr. Sandra Samons, who had examined plaintiff.  (Page ID 561.)  According to the administrative record, UniCare confirmed that Dr. Samons had not treated plaintiff between October 24 and November 24, 2010.  *Id.*  In other words, her treatment was untimely as far as the long-term benefits determination was concerned.  On March 23, 2011, UniCare sent plaintiff a second denial of benefits letter, again relying upon the fact that "effective October 25, 2010, you are no longer employed as a regular salaried employee."  (Page ID 563.)

The administrative record contains the following entry dated March 16, 2011, which puts much of this in perspective:

> [Plaintiff's] father called re [plaintiff's] benefit status.  Advised that [plaintiff] was first treated November 24th, disability would have commenced that date[,] however, [plaintiff] was [terminated] and therefore not eligible for benefits. Father stated [plaintiff] was catatonic since 10/25/10 and could not see a Dr. . . . Advised father of the policies in the Salary Plan that [contact] must be made w/in first 7 days, father asked for an exception.  Advised that we administer Plan and explained Appeal process.

(Page ID 561.)  In short, while the Plan covers disabilities due to mental illness, plaintiff's application was denied because she failed to follow time-sensitive reporting provisions that were neglected because of that very illness.

As mentioned at the outset, the district court granted summary judgment to UniCare, reaching the following conclusion with respect to UniCare's construction of the Plan:

> The Court concludes that it is a reasonable interpretation of these Plan provisions to require that a claimant be an employee of Ford at the time of filing a disability claim.  Section 4.02 explicitly refers to a "Participant" making a disability claim; to be a "Participant" under the Plan, one must be a "Covered

---

**2**It is unclear from the administrative record whether plaintiff was terminated on October 25th or 26th. *Compare, e.g.,* (Page ID 554) *with* (Page ID 558).  We adopt the date of October 26th, which is the date that human resources officer Pettway averred was stated in Ford's letter of termination to plaintiff.  (Page ID 987.)

Employee."  Furthermore, Section 3 mandates that to be eligible for benefits, a "Covered Employee" must meet a number of conditions.  It is, therefore, reasonable to conclude that a prerequisite to eligibility for benefits is status as a current "Covered Employee."  And to be a "Covered Employee," a claimant must be an "Employee" in the first place; that is, a person employed as a regular salaried employee by Ford.  It is undisputed that Plaintiff was terminated effective October 25, 2010 and that Plaintiff was not an employee of Ford as of December 1, 2010, when she filed her disability claim.  Therefore, the denial-of-benefits decision was supported by a reasonable interpretation of the Plan provisions.

*Waskiewicz v. UniCare Life and Health Ins. Co.*, No. 12-CV-11250, 2014 WL 1118501, at *9 (E.D. Mich. Mar. 20, 2014); (Page ID 1004).

**II.**

"This court reviews a district court's judgment in an ERISA case *de novo*, applying the same standard of review to the administrator's action as required by the district court." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006).  As the district court recognized, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When such discretionary authority is present, the administrator's decision is reviewed under an arbitrary and capricious standard.  *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).  The district court cited the following Plan provision as evidence of discretionary authority:

> The Company as the Plan Administrator, acting through the Claims Processor or by itself, shall have the discretionary authority to grant or deny Benefits under this Plan.  Benefits under this Plan will be paid only if the Claims Processor or the Plan Administrator determines in its discretion that the Participant is entitled to them.

(Page ID 678) (Section 8.07).

We acknowledge that the arbitrary and capricious standard of review is highly deferential.  However, that does not require federal courts to rubber-stamp decisions by plan administrators that fly in the face of a plan participant's legitimate expectation of benefits. At the onset of her disability, plaintiff was a Covered Employee as defined by the Plan and thus entitled

to benefits. While she did not comply with the notification deadlines outlined in Section 4.02 of the Plan, that failure is not surprising given that she was suffering from severe mental illness and was unable to comply due to the very disability for which she sought coverage.

We also find Ford's retroactive termination of plaintiff, which thereby deprived her of disability benefits, inconsistent with the spirit of employer-provided health care benefits generally and with this Plan specifically. For instance, the Plan contains the following provision:

> If the Participant leaves the Company for any reason, other than the Disability, or if the Participant is no longer a member of the eligible Employee class or is discharged or is released in the best interest of the Company, coverage will end on the date of termination, *unless the Participant is Disabled on that date*; . . . .

(Page ID 673) (Section 6.04(ii) (emphasis added)). Although this section governs the reduction or termination of on-going benefits and does not apply directly to plaintiff's situation, it indicates that the Plan contemplates awarding benefits to employees who become disabled as long as they are working for Ford at the time of onset, which occurred here. An insurance policy can hardly be said to provide employee disability "insurance" at all if it protects against sudden disability *but not if* the employer immediately discharges the employee because of the disability before she gets a chance to apply for the benefits. Reading the terms of an insurance policy in this way would be an abuse of discretion unless no other interpretation is possible. Common sense convinces us that the denial of benefits in this case runs contrary to the spirit of ERISA, which is designed to protect employee benefits, not subject them to arbitrary termination—in this case retroactive termination—after the benefit has otherwise accrued.

Likewise we are hard pressed to believe that plaintiff's failure to comply with reporting deadlines prescribed by the Plan should result in the denial of benefits as long as the failure to comply was directly caused by the disability itself. Of course, it is up to the employee to make that showing, but if she does so, then benefits may not be denied. For these reasons, the denial of benefits by Unicare based upon plaintiff's retroactive termination was arbitrary and capricious. On remand, plaintiff shall be given the opportunity to show that her alleged failure to comply with certain of the requirements found in Section 3 of the Plan was due to the very disability for which she seeks benefits.

**III.**

The judgment of the district court is **reversed** and the cause is **remanded** for further proceedings consistent with this opinion.