Dillard SANGSTER, personal representative of the estate of Brenda Sangster, deceased, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

No. 98–CV–73447.

United States District Court, E.D. Michigan, Southern Division.

July 2, 1999.

---

William C. Panzer, Mindell, Panzer, Malin & Kutinsky, Southfield, MI, for Plaintiff.

Randolph D. Phifer, Lisa A. Cylar, Patterson, Phifer & Phillips, Detroit, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

### Introduction

This is an employee benefits dispute governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). It concerns defendant Metropolitan Life Insurance Company's ("MetLife") decision to deny accidental death benefits to the estate of Brenda Sangster. The issue is whether MetLife's decision is arbitrary and capricious.

### I. Background

Brenda Sangster was an employee with the Ameritech Corporation ("Ameritech"). Ameritech maintains an Ameritech Life Insurance Program ("Ameritech Plan" or "Plan"), a group life insurance policy which provides a variety of life insurance benefits to eligible Ameritech employees. Brenda Sangster was a participant in the Plan. She designated her husband, Dillard Sangster, and her four children as Plan beneficiaries.

The Plan states that "AD & D insurance provides active employees added coverage for death or dismemberment from injuries caused solely by an accident." (Ameritech Plan at 8.) The Plan explains that "[i]f you are injured in an accident on or off the job

while insured and as a direct result of the accident and independently of all other causes...you or your beneficiary(ies) will receive all or part of your AD & D insurance." (*Id.* at 9.) The Plan explicitly excludes accidental death reimbursement for loss of life caused by physical illness. (*See id.* at 8.)

On April 24, 1997, the automobile in which Brenda Sangster was riding in collided with another automobile and then rolled over. She suffered only a small cut on her hand. Soon thereafter, however, she began having difficulty breathing, went into cardiorespiratory arrest, and died despite resuscitative efforts.

The coroner's autopsy found that no mechanical injuries were responsible for her death, but it did reveal that she had "severe atherosclerotic coronary heart disease." (Coroner's Rep. at 2.) The facts of the accident and Brenda Sangster's cardiac health led the coroner to conclude:

> Because her cardiorespiratory arrest occurred almost immediately after the vehicular collision (during which her vehicle overturned), and because of the severity of her heart disease, it is most probable that the physical/emotional stresses of the mishap are directly related to her having developed a lethal cardiac dysrhythmia. Therefore, it is my opinion that the Manner of Brenda J. Sangster's death is appropriately classified as Accidental.

(*Id.*) The death certificate listed the "IMMEDIATE CAUSE" of death as "Cardiac Dysrhythmia DUE TO (OR AS A CONSEQUENCE OF) Severe Coronary Artery Disease." The death certificate also noted that "Asthma" was another significant condition "contributing to death."

By identical letters dated September 27, 1997, MetLife informed plaintiff Dillard Sangster and the other beneficiaries that it denied their claims for accidental death benefits. The letter explains:

> MetLife has determined that AD & D benefits are not payable for the follow-

ing reasons: First, both the death certificate and the autopsy report indicate that Ms. Sangster's death was due to her pre-existing severe coronary artery and heart disease. Although she may have suffered stress as a result of the car accident, her heart and artery disease was the proximate and substantial cause of her death. Therefore, because her death was not due to injuries caused *solely* by an accident, no AD & D benefits are payable. Second, because Ms. Sangster's death was due to her heart and artery disease, AD & D benefits are not payable under the Plan's exclusion for losses caused by physical illness.

(First Claim Denial Letter at 2 (emphasis in original).)

On November 10, 1997, plaintiff's counsel requested that MetLife review its claim decision. On November 18, 1997, plaintiff's counsel submitted medical records in support of this request. Foremost among these records is a November 17, 1997 letter authored by Brenda Sangster's primary care physician, Brenda C. Churchill, M.D., that states:

> Brenda Sangster had been under my care since September 1995. During all her visits here, she never had any symptoms or signs of cardiovascular disease. She was involved in [a] vigorus [sic] diet and exercise regimen also without any difficulties referrable [sic] to the heart. The only episode of chest discomfort treated was Gastroesophagel reflux disease that responded to the appropriate therapy completely. To my knowledge her death was related to the motor vehicle accident alone.

MetLife considered this new information during the review, but decided that Churchill's observations did not outweigh the more direct evidence of the coroner's autopsy report and the death certificate. (*See* Final Claim Denial Letter at 2.) MetLife issued its final claim denial by letter dated March 6, 1998.

On July 22, 1998, plaintiff served MetLife with a breach of contract suit it had

previously filed against MetLife on July 8, 1998 in a Michigan state court. On August 10, 1998, MetLife filed a notice of removal in the United States District Court for the Eastern District of Michigan, arguing that ERISA governed the Ameritech Plan and thus the Eastern District had federal jurisdiction because plaintiff's state law enforcement action was federally pre-empted by ERISA's section 1132(a)(1)(B). Plaintiff did not contest removal.

On April 30, 1999, MetLife moved for summary judgment on the accidental death benefits issue. MetLife contends in its motion that the arbitrary and capricious standard is the standard to apply to test its decision to deny those benefits. It argues that in applying that standard the only rational decision based on all of the information in the administrative claim file is that Brenda Sangster died of heart disease and that the accidental death claims therefore had to be denied in light of the Plan's accidental death provisions.

In his response motion, plaintiff explicitly concedes that ERISA governs the Ameritech Plan. He appears to suggest, however, that the arbitrary and capricious standard may be inapplicable because MetLife did not have discretionary authority under the Plan to interpret and apply its terms. He argues that even if the arbitrary and capricious standard is applicable, MetLife may still have misapplied that standard because of its inherent conflict of interest as the claim administrator. He also contends that the "but for" causation test demonstrates that Brenda Sangster's death was caused solely by the accident as required by the accidental death provisions of the Plan.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). In ruling on MetLife's motion for summary judgment, I must draw all reasonable inferences in favor of Dillard Sangster, the non-moving party. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554 (6th Cir.1998) (citing *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 842 (6th Cir.1997)).

## III. Analysis

The threshold question is whether MetLife had discretionary authority under the Ameritech Plan. The procedure to follow in addressing this is stated in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), in which the Supreme Court held that an ERISA plan administrator's benefits decision is to be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See id.* at 115, 109 S.Ct. 948. In *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376 (6th Cir.1996), the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") interpreted *Firestone* to require that a benefit plan's grant of discretionary authority to the administrator must be "express." *Id.* at 380.

■ Ameritech Plan's grant of discretionary authority satisfies the *Yeager* requirement. The Plan states: "In carrying out their respective responsibilities under the Program, the insurance companies have full discretionary authority to interpret the terms of the Program and to determine eligibility for an entitlement to Program benefits in accordance with the terms of the Program." (Plan at 20.) These clear terms make *de novo* review improper.

■ Given the express grant of discretion, the proper standard for me to apply to MetLife's decision to deny accidental death benefits is, according to *Firestone*, a deferential one based on trust principles. *See* 489 U.S. at 111, 109 S.Ct. 948 ("A trustee may be given power to

construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable"). Guided by *Firestone*, the Sixth Circuit has selected the arbitrary and capricious standard to test the reasonableness of decisions made by ERISA claim administrators who have discretionary authority. *See Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1012 (6th Cir.1996). That standard states: "An ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.'" *Yeager*, 88 F.3d at 381 (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991)). In conducting this rationality inquiry, I consider only those facts known to the MetLife claim administrator at the time he or she made the decision to deny accidental death benefits. *See Miller*, 925 F.2d at 986.

■ Having determined that the arbitrary and capricious standard must be applied here, I must then determine whether the MetLife claim administrator's decision to deny accidental death benefits to Brenda Sangster's beneficiaries is rational in light of the Ameritech Plan's accidental death provisions. Those provisions limit accidental death benefits eligibility to a Plan participant whose death is from injuries "caused solely by an accident." (Plan at 8.) The effect of the "caused solely" limitation is to require the claim administrator to disqualify a participant from receiving accidental death benefits where interdependent accidental and non-accidental causes of death are present. The phrase's plain meaning is underscored by the Plan's later statement that accidental death benefits eligibility depends on the participant's injury occurring "as a direct result of the accident and independently of all other causes." (*Id.* at 9.)

Under these Plan provisions, it is clear that the MetLife claim administrator's decision to deny accidental death benefits was reasonable and thus not arbitrary and capricious. While the coroner concluded that Brenda Sangster's death was accidental, the facts and reasoning in support of that conclusion show that Brenda Sangster's severe heart disease and the automobile accident were interdependent causes of her death. (*See* Coroner's Rep. at 2 (joint use of "because").) Indeed, the coroner's report establishes that neither the heart disease nor the accident was the sole cause of her death.

The disagreement between the coroner's conclusion and the MetLife administrator's conclusion has a reasonable basis. Simply put, the Plan adopts a more stringent definition of accidental death for its purposes than the coroner did for his purposes. The Plan requires the MetLife administrator to ask whether accidental injury was the sole cause of death, while it is evident from the coroner's report that he asked only whether the accident had a direct relation to Brenda Sangster's death. (*See id.* (observing that the stress of the accident was "directly related" to the heart attack).) An affirmative answer to the coroner's broad causation test does not logically compel an affirmative answer to the Plan's narrow causation test. Accordingly, it is reasonable for the MetLife administrator to determine that the coroner's conclusion did not bind his/her examination of the evidence.

Plaintiff argues that the "but for" causation test reveals the arbitrariness of the MetLife administrator's decision. Yet that test is not the test the Plan requires the administrator to apply. Even if it were, the "but for" test does not help plaintiff—indeed, it works against him. Applied to the facts of Brenda Sangster's death, the "but for" test indicates that *both* her severe heart disease and the accident had direct causal roles in her death. Thus, "but for" the heart disease, the heart would not have been vulnerable to the psychological stress of the accident; conversely, "but for" the accident, there would have been no stress to trigger the heart attack. If anything, then, the "but for"

test displays the reasonableness of the MetLife administrator's decision to deny accidental death benefits in light of the Plan's accidental death provisions.

The letter from Brenda Sangster's physician does not alter my analysis. It was reasonable for the MetLife administrator to conclude that the physician's indirect observations were not superior evidence to the direct observations of the coroner's autopsy. Moreover, the MetLife administrator's reliance on the coroner's presumably accurate diagnosis of severe heart disease, instead of the contrary statements of Brenda Sangster's physician, does not make the administrator's decision to deny accidental death benefits facially unreasonable in the eyes of the federal common law. *See Birdsell v. United Parcel Service,* 94 F.3d 1130, 1133 (8th Cir.1996) ("We will uphold the decision to deny benefits if we find it to be reasonable—that is, if it is supported by a reasoned explanation, even if another reasonable, but different, interpretation may be made").

Plaintiff's final argument is that the MetLife administrator's inherent conflict of interest rendered his/her decision to deny accidental death benefits unreasonable. For this argument, plaintiff cites *Miller v. Metropolitan Life Ins. Co., supra.* That case, however, stands only for the proposition that a federal court confronted with an arbitrary and capricious question must always take into consideration the inherent conflict of interest that an insurance company has when it is "the decisionmaking fiduciary for benefits that are paid out of the insurance company's assets rather than out of the assets of the employee benefit plan." *Id.* at 984.

Even with this consideration, my analysis remains unaffected. The undisputable facts of the coroner's autopsy report and the death certificate permitted the MetLife claim administrator to come to the reasonable conclusion that Brenda Sangster's death was not solely caused by accidental injury as required by the Plan. Thus the existence of an inherent conflict of interest for the MetLife administrator, if it existed at all, is irrelevant.

## Conclusion

For the foregoing reasons, I conclude that MetLife's decision to deny accidental death benefits to the beneficiaries of Brenda Sangster is not arbitrary and capricious in light of the Ameritech Plan's accidental death provisions and the evidence before MetLife. As a matter of law, therefore, MetLife is entitled to summary judgment in its favor. MetLife's motion is GRANTED.

**IT IS SO ORDERED.**