Tina THOMAS, Plaintiff,

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY,** Defendant.

C.A. No.: 2:06–02497–PMD.

United States District Court, D. South Carolina, Charleston Division.

April 30, 2007.

---

George J. Kefalos, George J. Kefalos Law Office, Charleston, SC, for Plaintiff.

Duke Raleigh Highfield, Nancy Bloodgood, Young Clement Rivers And Tisdale, Charleston, SC, for Defendant.

### ORDER

DUFFY, District Judge.

Plaintiff Tina Thomas ("Plaintiff"), as the beneficiary under her husband's em-

ployer-sponsored benefit plan, brings a claim pursuant to the civil enforcement provision of the Employee Retirement Income Security Act ("ERISA"), § 502(a) (29 U.S.C. § 1132(a)), to recover accidental death and personal loss benefits following her husband's death. This matter is currently before the court on Defendant Reliance Standard Life Insurance Company ("Reliance") and Plaintiff's Cross Motions for Summary Judgment. For the reasons stated herein, Reliance's Motion for Summary Judgment is granted, and Plaintiff's Motion is denied.

## BACKGROUND

The uncontested facts of this case,[1] considered in the light most favorable to Plaintiff, are as follows:

Timmy Thomas, now deceased, was employed by Edw. C. Levy Co. ("Levy"). As an employee of Levy, Mr. Thomas was a participant in the employer's Group Accident Policy (the "Policy") that is insured by Reliance. As set forth by the Policy, the requirements for payment of accidental death and dismemberment benefits differed from the requirements for payment of basic life insurance benefits. Among other things, the Policy provides coverage for accidental death and dismemberment benefits only where the loss occurs within 365 days from the date of the accident. (RSL 14.) Also, no benefits are payable under the Policy for losses "to which sickness, disease, or myocardial infarction, including medical or surgical treatment thereof, is a contributing factor; or caused by suicide, or intentionally self-inflicted injuries." (RSL 20.)

On January 4, 2004, Timmy Thomas died in his car while parked in front of the graveyard on Eccles Church Road in Cordesville, South Carolina. According to the Incident Report created by the South Carolina Law Enforcement Department

("SLED"), on the day before he died, Mr. Thomas told his mother that he was going to kill himself at his father's grave at Eccles Church. (RSL 299–300.) Tina Thomas told the SLED investigator that when she learned of Mr. Thomas's threat of suicide, she and her brother went to Eccles Church where they found Mr. Thomas in his car, already deceased. (*Id.*) Tina Thomas stated that she and Mr. Thomas had been going through a divorce, and that Mr. Thomas had been depressed and abusing his prescription drugs. (*Id.*)

According to the Coroner's Certificate of Death on file in the Berkeley County Health Department, Mr. Thomas' cause of death was "asphyxia by vomitus" which occurred due to "self drug administration." (RSL 268.) The Coroner noted that the manner of death was "accident." (*Id.*) The SLED Forensic Services Laboratory Report indicates that Mr. Thomas had a blood level of 0.20 mg/L Oxycodone (a narcotic pain reliever), 0.10 mg/L Propoxyphene (another pain reliever), and 0.12 mg/L Norpropoxyphene (a metabolite of propoxyphene). (RSL 269.) Mr. Thomas's medical records show that he had recently been prescribed Percocet tablets (containing 10mg of oxycodone, to be taken on an individual basis twice a day) and Hydrocodone/APAP tablets (each containing 5 mg of hydrocodone, to be taken on an individual basis every four to six hours as needed) to treat his chronic back pain. (RSL 201.) Mr. Thomas's history of back pain originated with a stabbing wound injury which occurred in 1997.

Following Mr. Thomas's death, Plaintiff submitted a claim for accidental death benefits under the Policy and a separate claim under Levy's Group Life accidental death claim. In the denial letter dated June 28, 2004, Reliance explained that the evidence indicated that Mr. Thomas died "due to a

1. All documents cited by this Order are included in the parties' joint stipulation.

self-inflicted injury and his attempt at committing suicide." (RSL 293–95.) As such, his death "was not due to accidental bodily 'Injury' as defined in the policy [and] this loss ... is excluded from coverage." (*Id.*) Reliance also found that because prescription drugs had contributed to Mr. Thomas's death, the "illness" for which the drugs were prescribed was a contributing factor in his death. (*Id.*) Accordingly, because the Policy does not cover any loss to which sickness, disease or the treatment thereof is a contributing factor, this particular loss is excluded from coverage. For these reasons, Reliance denied the claim.

On September 1, 2004, Plaintiff appealed Reliance's denial. (RSL 266–67.) Following an investigation and review by a medical consultant, Reliance found that the drugs in Mr. Thomas's system were pain medications which had been prescribed for the treatment of headaches and back pain. (RSL 229–31.) These drugs would be expected to decrease the level of consciousness, which would contribute to asphyxia. As such, based on all available information, Reliance determined "that a sickness or disease condition(s) and the treatment for such conditions contributed to Mr. Thomas' death." (*Id.*) Accordingly, Reliance again denied coverage based on the Policy's exclusion of losses caused by sickness.

Following a second appeal, Reliance conducted a third review and again referred the file to a medical consultant. On November 3, 2005, Reliance once again denied Plaintiff's claim for benefits. (RSL 68–71.) This time, Reliance explained that this loss was not covered due to the suicide exclusion, the exclusion of "self-inflicted injuries," the sickness exclusion, and the exclusion of losses occurring more than 365 days after the initial accident.

## DISCUSSION

### A. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The court is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

### B. Law and Analysis of ERISA Claim

#### 1. Standard of Review

Mr. Thomas's accidental death and dismemberment policy was part of an

employee benefit plan and subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, so the court must look to ERISA law to select the proper standard for review. "[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan grants the administrator sufficient discretionary authority, then the abuse of discretion standard applies and the denial will not be reversed "if reasonable, even if the court itself would have reached a different conclusion." *Booth v. Wal–Mart Stores, Inc. Assoc. Health and Welfare Plan*, 201 F.3d 335, 340 (4th Cir.2000). This means that so long as the denial of benefits is the result of "a deliberate, principled reasoning process and ... is supported by substantial evidence," the court will uphold it. *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir.1997). The court's scope of review is limited to the evidence that was before the administrator or fiduciary when it made its benefits decision. *Stup v. UNUM Life Ins. Co. of America*, 390 F.3d 301 (4th Cir.2004).

▮ Although the court can not deviate from the abuse of discretion standard, the court may modify that abuse of discretion standard according to a sliding scale, depending upon the level of potential conflict of interest between the administrator and the beneficiary. *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997). As the Fourth Circuit has ex-

plained: "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan term, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Id.* This "sliding scale" approach is appropriate in reviewing denials of benefits where the plan insurer and administrator are the same. *Id.* In reviewing the denial of benefits under this approach, the court must apply a heightened abuse of discretion standard "only to the extent necessary to counteract any influence unduly resulting from the conflict" of interest. *Id.; see Bedrick By and Through Humrickhouse v. Travelers Ins. Co.*, 93 F.3d 149 (4th Cir. 1996); *Doe v. Group Hospitalization and Medical Serv.*, 3 F.3d 80, 87 (4th Cir.1993).

## 2. Analysis

▮ In the instant case, there is really no question that Reliance possessed discretionary authority to determine Plaintiff's entitlement to benefits. The parties do not dispute this and the Policy's language is clear.[2] It is also undisputed that Reliance served as the "claims review fiduciary;" therefore, its decision to deny benefits was necessarily made under a conflict of interest. As such, the court considers whether Reliance's decision to deny benefits constitutes an abuse of discretion, keeping in mind that because the "claims review fiduciary" and the insurer are the same, the record must contain substantial evidence supporting the denial and the denial must be objectively reasonable. Applying this standard to the record before the court, it is clear that Reliance did

---

**2.** The Policy provides that "Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary author-

ity to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions made by the claims review fiduciary shall be complete, final and binding on all parties."

not abuse its discretion or act outside the scope of its discretion.

Consistent with the broad grant of authority contained in the Policy, Reliance found that the exclusions based on (1) suicide, (2) self-inflicted injuries, (3) sickness or disease, and/or (4) losses occurring more than 365 days after the initial accident applied to the Plaintiff's claim. In the final letter denying benefits, Reliance explained that it based its decision on the following evidence in the record: the SLED Incident Report and Forensics Services Laboratory Report, and the Certified Death Certificate.

■ The SLED Incident Report indicated that Mr. Thomas had sufficient motive for suicide—he was depressed, was going through a divorce, and had been abusing his prescription pain medication. Further, the SLED Report noted that only one day prior to his death, Mr. Thomas expressed an intention to commit suicide in the exact place in which he ultimately was found dead. The SLED Forensic Services Laboratory Report indicated that Mr. Thomas's blood contained a significant amount of narcotic pain medication. Further, although he ultimately ruled the manner of death was an "accident,"[3] the Coroner found that Mr. Thomas's death by asphyxiation was caused by his self administration of drugs.

Plaintiff argued in her appeals that because Mr. Thomas did not ingest a lethal dose of drugs, his death by asphyxiation was accidental. In its final denial letter, Reliance addressed this argument, explaining that the evidence showed (1) Mr. Thomas intended to harm himself, (2) he intentionally ingested prescription drugs, and (3) his ingestion of these drugs contributed to his inability "to maintain a clear airway despite vomiting." (RSL 69.) As such, even though Mr. Thomas did not take enough drugs to kill himself by lethal overdose, his death by asphyxiation was still the result of an intentional act of self-destruction. The record contains no evidence suggesting that Mr. Thomas's actions were not intentionally self-destructive, i.e., that he accidentally took enough medication to cause him to be lose consciousness and asphyxiate. For this reason, Reliance determined that Mr. Thomas's intentional act of self-destruction ultimately resulted in his death, and it denied benefits under the exception for losses "caused by suicide, or intentionally self-inflicted injuries."

Plaintiff now argues that the denial of benefits was unreasonable because Reliance's "own investigation showed there was no basis for asserting the suicide exclusion." Plaintiff notes that in the "Quality Review Appeal Summary" issued following Plaintiff's initial appeal, Reliance noted that the "file information does not support that the insured committed suicide or died of intentionally self-inflicted injuries. The medical department review also does not conclusively support that insured committed suicide. It does not indicate that there were lethal levels of medication in his

---

**3.** The court notes that the Coroner's determination that death was an "accident" is not determinative. As several courts have noted, "the cause of death as certified by the Medical Examiner does not determine whether the death was an 'accident' for purposes of the Policy." *See Clark v. Metropolitan Life Ins. Co.,* 369 F.Supp.2d 770, 776 (E.D.Va.2005); *Mullaney v. Aetna U.S. Healthcare,* 103 F.Supp.2d 486, 491 (D.R.I.2000) (medical examiner's determination of "accident" does not mean the "accident" was of the sort contemplated by defendant or described in the Plan where the medical examiner has only four choices for cause of death: accident, suicide, homicide, and undetected); *Sangster v. Metropolitan Life Ins. Co.,* 54 F.Supp.2d 708, 712 (E.D.Mich.1999)("[I]t is reasonable for the ... administrator to determine that the coroner's conclusion did not bind his/her examination of the evidence.").

 

blood." (RSL 275.) Plaintiff argues that Reliance's finding that Mr. Thomas committed suicide is inconsistent with this "Appeal Summary," and that the record therefore does not support Reliance's decision.

In light of the compelling evidence in the record indicating that Mr. Thomas intentionally ingested medication in order to harm himself, the court finds that the fact that Reliance recognized and considered the weaknesses in a finding of suicide prior to issuing its final decision does not make this decision unreasonable. The evidence available to Reliance at the time of denial supports its finding that Mr. Thomas intended to commit suicide, ingested dangerous narcotic medications, and died as a result. Although Mr. Thomas's suicide attempt may have been unsuccessful absent an intervening occurrence, i.e., his vomiting, Reliance reasonably found that Mr. Thomas intended the ultimate result, although he may not have anticipated the exact means.

The court notes that Reliance's decision need not be the only sensible one, so long as the decision provided reasoned explanation, based on evidence, in support of the particular outcome. *Ellis*, 126 F.3d at 232. In this case, Reliance's denial letter clearly provided the requisite explanation based on sufficient evidence. Accordingly, considering all the evidence, Reliance's decision to deny benefits under the exception for losses "caused by suicide, or intentionally self-inflicted injuries" was objectively reasonable and supported by substantial evidence. Even under a heightened or modified abuse of discretion standard, and considering the facts in the light most favorable to Plaintiff, the court finds that

no rational trier of fact could find that there was an abuse of discretion here.[4]

## *CONCLUSION*

For the foregoing reasons, the court finds that Reliance's denial of Plaintiff's claim for accidental death benefits was objectively reasonable and supported by the evidence; therefore, the denial was not an abuse of discretion. Accordingly, the court **ORDERS** that Reliance's Motion for Summary Judgment is **GRANTED**. The court further **ORDERS** that Plaintiff's Motion for Summary Judgment is **DENIED**.

**AND IT IS SO ORDERED.**

---

4. Because Reliance properly denied benefits under the exception for "suicide or intentionally self-inflicted injuries," the court does not address whether Reliance properly concluded that a contributing factor to Mr. Thomas's death was "sickness, disease, or myocardial infarction, including medical or surgical treatment thereof" or that his death occurred more than 365 days following the accident contributing to his death.